IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Prince Wilson,                              )    Civil Action No. 8:14-cv-03606-RBH-JDA
                                            )
                        Plaintiff,          )    **REPORT AND RECOMMENDATION**
                                            )    **OF MAGISTRATE JUDGE**
            vs.                             )
                                            )
Carolyn W. Colvin,                          )
Commissioner of Social Security,            )
                                            )
                        Defendant.          )

        This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2]

For the reasons set forth below, it is recommended that the decision of the Commissioner

be reversed and remanded for administrative action consistent with this recommendation,

pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

        In February 2011, Plaintiff filed applications for DIB and SSI, alleging disability

beginning June 1, 2010.  [R. 152–66.]  Plaintiff, through counsel, subsequently amended

---

        [1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

        [2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social
Security after a hearing under paragraph (1) shall be subject to judicial review as provided
in section 405(g) of this title to the same extent as the Commissioner's final determinations
under section 405 of this title."  42 U.S.C. § 1383(c)(3).

his alleged onset date of disability to January 30, 2011. [R. 36.] The claims were denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 81–92, 101–04.] Plaintiff requested a hearing before an administrative law judge ("ALJ") and on April 24, 2013, ALJ Edward T. Morriss conducted a video hearing on Plaintiff's claims, with Plaintiff appearing in Myrtle Beach, South Carolina, and the ALJ presiding over the hearing from North Charleston, South Carolina. [R. 32–55.]

On May 15, 2013, the ALJ issued his decision, finding Plaintiff was not disabled under the Social Security Act ("the Act"). [R. 11–31.] At Step 1,[3] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2015, and had not engaged in substantial gainful activity since January 30, 2011, the amended alleged onset date [R. 16, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, obesity, and borderline intellectual functioning. [R. 16, Finding 3.] The ALJ also found Plaintiff had the following non-severe impairments: history of hernia repair; hypertension; diabetes mellitus and cholesterol problems; vertigo and enlarged prostate; and vision problems. [R. 17.] Additionally, the ALJ found Plaintiff's diagnosis of a depressive disorder was made based on Plaintiff's subjective complaints and not objective medical findings. [*Id.*] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 17, Finding 4.] The ALJ specifically considered Listings 1.02, 1.04, 12.02, and 12.05. [R. 17–20.] Additionally, the ALJ

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

concluded that the combined effects of Plaintiff's impairments were not at least equal in

severity to those described in Listings 1.02, 1.04, 2.00, 4.00, 6.00, 9.00, 12.02, 12.04, and

12.05.  [*Id.*]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the

ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform
> medium work as defined in 20 CFR 404.1567(c) and
> 416.967(c) with no climbing of ladders, ropes and scaffolds
> and frequent handling with the bilateral upper extremities. He
> is further limited to understanding, remembering and carrying
> out simple instructions.

[R. 20, Finding 5.]  Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff

was unable to perform his past relevant work as a forklift driver or a construction worker.

[R. 24, Finding 6.]  However, based on his age, education, work experience, and RFC,

there were jobs that existed in significant numbers in the national economy that Plaintiff

could perform.  [R. 25, Finding 10.]  Thus, the ALJ found that Plaintiff had not been under

a disability, as defined in the Act, from January 30, 2011, through the date of the decision.

[R. 25, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Appeals

Council declined review.  [R. 1–5.]  Plaintiff filed this action for judicial review on September

9, 2014.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and

that remand is necessary for the following reasons:

1.  The ALJ failed to properly assess whether Plaintiff's intellectual deficiencies met or equaled the requirements set forth in Listing 12.05(C), especially considering the criteria promulgated in *Flowers v. U.S. Dep't of Health & Human Svcs.*, 904 F.2d 211 (4th Cir. 1990) [Doc. 16 at 4–7];

2.  The ALJ failed to properly consider whether Plaintiff's intellectual deficiencies met or equaled the requirements set forth in Listing 12.05(B), especially considering the results of his I.Q. testing in elementary school which indicated an I.Q. of 59 or less and the lack of any other testing to the contrary [*id.* at 7–9]; and

3.  The ALJ erred in failing to obtain Vocational Expert Testimony in light of the substantial evidence in the record of Plaintiff's significant non-exertional limitations, and he violated SSR-96-6p when he mechanically relied on the Medical-Vocational Guidelines to deny the claim without providing any specific reasons for doing so [*id.* at 9–10].

The Commissioner, on the other hand, contends substantial evidence supports the ALJ's finding that Plaintiff did not meet Listing 12.05 and substantial evidence supports the ALJ's reliance on Medical-Vocational Rule 203.12.  [Doc. 17 at 6–15.]

## **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is

4

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial

evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

6

may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

in considering disability claims).  The ALJ must consider whether (1) the claimant is

---

2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health &
Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme
Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect.
*See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply
the more stringent *Borders* inquiry.

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

9

**B.    *Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant

disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.   *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.   *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e);  *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

---

is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to

13

support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment

14

to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also*

*Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).   The regulations are clear: a

consultative examination is not required when there is sufficient medical evidence to make

a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the

regulations, however, the ALJ may determine that a consultative examination or other

medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he

furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing

the existence of a medical impairment that could reasonably be expected to produce the

pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling

pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the

claimant has produced medical evidence of a 'medically determinable impairment which

could reasonably be expected to produce . . . the actual pain, in the amount and degree,

alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged

pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the

Fourth Circuit, it is well established that "subjective complaints of pain and physical

15

discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain

16

> is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

17

## APPLICATION AND ANALYSIS

**The ALJ's Reliance on the Grids**

Plaintiff contends that, because Plaintiff had significant nonexertional impairments, the ALJ erred in relying solely on the grids and not obtaining the testimony of a vocational expert to determine there were significant numbers of jobs in the national economy Plaintiff could perform. [Doc. 16 at 9–10.] The Commissioner contends that the ALJ was not required to obtain the testimony of a vocational expert because the nonexertional limitations included in the ALJ's RFC assessment did not significantly erode the occupational base. [Doc. 17 at 12–15.] For the reasons explained below, the Court is unable to conclude the ALJ's decision with respect to Plaintiff's ability to perform other work is supported by substantial evidence.

The grids consider only the exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his or her disability. *Walker*, 889 F.2d at 49. "Exertional limitations" exist "[w]hen the limitations and restrictions imposed by [the claimant's] impairment(s) and related symptoms, such as pain, affect only [her] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b). A nonexertional limitation "is a limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not, such as mental retardation, mental illness, blindness, deafness or alcoholism" and is "present at all times in a claimant's life, whether during exertion or rest." *Gory*, 712 F.2d at 930 (footnotes omitted). A nonexertional limitation does not directly affect the claimant's exertional abilities—the ability to sit, stand, walk, lift, carry, push, or pull; rather, nonexertional limitations affect the mind, vision,

18

hearing, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use the fingers for fine activities. *See* 20 C.F.R. § 404.1569a(c). "Thus, it is the nature of the claimant's limitations, not certain impairments or symptoms, that determines whether the claimant will be found to have only exertional limitations or restrictions, only nonexertional limitations or restrictions, or a combination of exertional and nonexertional limitations or restrictions." SSR 96-9p, 61 Fed. Reg. 34,478-01, at 34,481 (July 2, 1996).

Thus, when a claimant suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, the ALJ may not rely exclusively on the grids to establish that the claimant could perform other work that exists in the national economy. *See Walker*, 889 F.2d at 49; *Coffman*, 829 F.2d at 518 ("When nonexertional limitations . . . occur in conjunction with exertional limitations, the guidelines are not to be treated as conclusive." (citing *Roberts v. Schweiker*, 667 F.2d 1143, 1145 (4th Cir.1981); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a), (d)–(e)(2); 20 C.F.R. § 404.1569)); *Hammond*, 765 F.2d at 425–26 ("[T]he grids inadequately describe[] the claimant who suffers a disability present in the absence of physical exertion."); 20 C.F.R. § 404.1569a(d). Rather, in those circumstances, the Commissioner has the burden to prove by expert vocational testimony—not exclusive reliance on the grids—that, despite the claimant's combination of exertional and nonexertional impairments, specific jobs exist in the national economy that the claimant can perform. *Grant*, 699 F.2d at 192.

Here, in evaluating Plaintiff's mental impairment at Step 3, the ALJ determined that Plaintiff's mental impairment resulted in no restrictions in activities of daily living; mild difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation. [R. 18.] At Step 4, the ALJ noted that he found

19

Plaintiff's mental impairment—borderline intellectual functioning—was a severe impairment.  Thus, the ALJ determined at Step 4 that Plaintiff was capable of performing medium work as defined in the Act with no climbing of ladders, ropes, and scaffolds; frequent handling with the bilateral upper extremities; and limitations to understanding, remembering, and carrying out simple instructions.  [R. 20, Finding 5.]  The ALJ also noted that the limitations to understanding, remembering, and carrying out simple instructions is also due to concentration deficits that could likely result because of Plaintiff's pain.  [R. 23.]  In determining at Step 5 whether Plaintiff could make a successful adjustment to other work, the ALJ concluded as follows:

> If the claimant had the residual functional capacity to perform the full range of medium work, considering the claimant's age, education, and work experience, Medical-Vocational Rule 203.12 would direct a finding of "not disabled".  The additional limitations have little or no effect on the occupational base of unskilled medium work.  A finding of "not disabled" is therefore appropriate under Medical-Vocational Rule 203.12 and Social Security Ruling 83-14, 83-10 and 85-15.  In this regard, Social Security Ruling 83-14 states that the inability to ascend or descend ladders or scaffolding is not significant.  As such, the claimant's limitations on ladders would not significantly erode the medium occupational base.  Social Security Ruling 83-10 states that medium work generally requires use of the arms and hands to grasp, hold and turn objects but it generally does not require the use of the fingers for fine manipulation activities.  Therefore, I have determined the claimant's manipulative limitations would not to significantly erode the medium occupational base.  Social Security Ruling 85-15 provides that the limitation for the claimant regarding instructions does not significantly erode the unskilled occupational base at any level.

[R. 25.]

Upon review, the Court notes that, in his decision, the ALJ provided no discussion regarding whether the limitations resulting from Plaintiff's mental impairments had any

20

effect on the occupational base of unskilled medium work; rather, he conclusorily stated that "[t]he additional limitations have little or no effect on the occupational base of unskilled medium work. A finding of 'not disabled' is therefore appropriate under Medical-Vocational Rule 203.12 and Social Security Ruling 83-14, 83-10 and 85-15." [R. 25.] Curiously, however, the ALJ did not explain how someone who is moderately impaired in concentration, persistence, or pace would be able to perform a full range of medium work; nor does such a degree of impairment square with the ALJ's assumption that Plaintiff's limitations would have little or no effect on the occupational base of unskilled medium work.

The Court finds persuasive the reasoning in *Bonds v. Astrue*, No. 6:07-1135, 2008 WL 2952446 (D.S.C. July 29, 2008) (adopting the report and recommendation after no objections were filed). In *Bonds*, the ALJ found the claimant was limited to unskilled work due to mild to moderate concentration deficits from pain, and the ALJ ultimately concluded the grids directed a finding of not disabled. 2008 WL 2952446, at *11. On review in the district court, the claimant contended the ALJ erred by relying on the grids to deny his claim and argued that, because the claimant suffered from a significant nonexertional impairment, the ALJ should have obtained expert vocational testimony to prove a significant number of jobs existed in the national economy that the claimant could perform. *Id.* In response, the Commissioner argued the claimant's nonexertional limitation of being limited to unskilled work is incorporated into the grids, and therefore, the ALJ was correct to rely exclusively on the grids in making his disability determination. *Id.* The magistrate judge disagreed, *id.*, and in adopting the magistrate's recommendation, the district court directed the ALJ to obtain vocational expert testimony if on remand the ALJ reached step

21

five, *id.* at 2.  The magistrate judge noted the following rationale from the Northern District

of Texas:

> The ALJ further found this nonexertional impairment limited plaintiff to unskilled jobs.  In making this determination, the ALJ, in effect, became a vocational expert.  Whether plaintiff's moderate impairment in the area of concentration, persistence and pace limited plaintiff to one and two step jobs and whether such eroded the occupational base and to what degree it was eroded was a determination for a vocational expert.  While the ALJ may be correct that jobs calling for simple and/or one to two step instructions may be unskilled sedentary jobs, such jobs also require an individual to perform repetitive tasks over an eight-hour work day. Plaintiff's nonexertional impairment of moderate limitation in the area of concentration, persistence and pace could directly affect plaintiff's ability to remain attentive and concentrate.  This could directly affect plaintiff's ability to perform simple sedentary work, such as assembly line work, unskilled in nature, which the ALJ found plaintiff capable of performing.  It may be that a vocational expert can identify unskilled sedentary jobs which would not be affected by plaintiff's nonexertional limitations.  It may also be that a vocational expert would find limitations in the area of concentration, persistence and pace, would affect such jobs and further erode the number of unskilled sedentary jobs available. Reversal and remand is required so a vocational expert can be called and can address the issue.

*Id.* at *11 (quoting *Chapa v. Astrue*, No. 2:05-cv-0253, 2008 WL 952947 (N.D. Tex. Apr.

8, 2008)).

Here, because the ALJ found Plaintiff to have a severe mental impairment, resulting

in mild difficulties in social functioning and moderate difficulties in concentration,

persistence, or pace [R. 18], the ALJ was required to use a vocational expert to establish

the claimant's ability to perform other work.  20 C.F.R. § 404.1569a (2001); *see Walker*,

889 F.2d at 49–50.  As a result, the ALJ improperly took on the role of the vocational

expert by relying exclusively on the grids because when a claimant suffers from both

22

exertional and nonexertional limitations, the grids may serve only as guidelines, *Gory*, 712 F.2d at 931. Therefore, the Court is unable to conclude that the ALJ's finding of no disability is supported by substantial evidence, and remand is necessary to receive testimony from a vocational expert as to whether jobs are available Plaintiff could perform.

**Plaintiff Remaining Allegations of Error**

Although the Court has already determined a basis for remand, the Court's review of the ALJ's decision compels a brief discussion of Plaintiff's remaining allegations of error. Plaintiff challenges the ALJ's finding that his mental impairment met neither 12.05B nor 12.05C.

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination"); *Gilbert v. Colvin*, C/A No. 8:13-1561-JFA-JDA, 2014 WL 4809923, at *12 (D.S.C. Sept. 26, 2014) (explaining that where there is "'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals" it) (citations omitted).

To meet Listing 12.05, a claimant must satisfy the "diagnostic description" in the

introductory paragraph and any one of the four sets of criteria—A, B[8], C[9], or D.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.  The diagnostic description describes intellectual disability as "significantly sub-average general intellectual functioning with deficits in adaptive functioning."  *Id.* § 12.05.  The Administration "has never adopted a standard of measurement for the term 'deficits in adaptive functioning' in the capsule definition of Listing 12.05."  *Wall v. Astrue*, 561 F.3d 1048, 1073 (10th Cir. 2009) (Holloway, C.J., dissenting).  The Administration has noted, however, that it permits use of any of the measurement methods recognized and endorsed by any of the four major professional organizations dealing with mental retardation.  *Id.* at 1074; *but see Cox v. Astrue*, 495 F.3d 614, 618 n.4 (8th Cir. 2007) (noting that "the medical standard for mental retardation is not identical to the legal standard").  Medical professional organizations have stated that deficits in "adaptive functioning" can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.  *See Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002) (relying on two American medical associations). Further, to satisfy the "diagnostic description" in the introductory paragraph, the claimant's deficits in adaptive functioning must have "initially manifested during the developmental

---

[8]To show that he meets or medically equals the requirements of Listing 12.05B, Plaintiff has the burden of proving that he has deficits in adaptive behavior initially manifested before the age of 22 and a "valid verbal, performance or full scale IQ of 59 or less."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

[9]Listing 12.05C requires Plaintiff to prove a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

In this case, the Court finds troubling the ALJ's failure to address, at a minimum, Plaintiff's educational history and test scores in determining whether deficits in adaptive functioning existed before age 22.  The ALJ casually glossed over Plaintiff's history and chose to find that such deficits did not exist without explaining his consideration of the evidence relevant to such a finding.[10]  Accordingly, the ALJ should be directed to properly

---

[10]Plaintiff attended school in the Williamsburg County School District attending special education classes through half of ninth grade. [R. 274, 279.] School records show that in November 1968, at the age of 12, Plaintiff obtained an IQ score of 57. [R. 19.] A Psychological Evaluation performed by Dr. James H. Way, PhD. ("Dr. Way") on June 27, 2011, provided that Plaintiff was 55 years old at the time; he resided alone for approximately 15 years; was married for 18 years; and reported that he completed 9th grade and received instruction in a special education classroom setting. [R. 345.] Plaintiff worked as a forklift driver in a textile factory for 25 years; performed construction labor for 10 years; and performed packing tasks at a factory for six months. [Id.]

Dr. Way indicated that Plaintiff testified that he spent time watching television and interacting with his mother and brother. [R. 346.] Plaintiff also stated that he attends church occasionally; completes yard work; performs cooking, cleaning, laundry, and occasional grocery shopping tasks. [Id.] Plaintiff stated that he drives and is capable of directing funds management. [Id.] Dr. Way observed Plaintiff to be tearful on one occasion, with restricted affect; no acute distress; logical thought processes; but with slow cognitive speed. [Id.] Dr. Way noted Plaintiff was slow with reading and math and slow to learn new tasks; his overall pace of responding was slow; concentration fair; and his functional history suggest at least borderline intellectual functioning. [R. 346–47.] Plaintiff also indicated that he received assistance from others with certain work tasks secondary to limited educational history. [R. 347.]

Dr. Way opined that, while Plaintiff's functional history would suggest at least borderline intellectual functioning, intellectual ability scores from WAIS-IV fell in the range of mild mental retardation. [Id.] Specifically, Plaintiff's test scores indicated quite limited reading and math skills with a reading grade equivalent of kindergarten and a math grade equivalent of 2nd grade. [Id.] Plaintiff achieved a full scale IQ score of 59, and his intellectual ability scores fell in the mildly deficient range. [Id.] Dr. Way opined that Plaintiff's full scale score was lowered by his limited working memory skills. [R. 348.] Likewise, Lisa Clausen, PhD. ("Dr. Clausen"), in conducting a Mental RFC for Plaintiff, found him to be moderately limited in his ability to understand and remember detailed instructions; his ability to carry out detailed instructions; and his ability to maintain attention

consider the record and provide a discussion of his evaluation of the presence of deficits in adaptive functioning before age 22 in light of the record evidence and the Listing requirements.  Moreover, the ALJ failed to adequately explain his rejection of Plaintiff's IQ score of 57 in November 1968 and full-scale IQ score of 59 in June 2011, and/or his finding that the scores were invalid indicators of Plaintiff's true intellectual functioning.  [R. 19.] Although the regulations permit the ALJ to consider evidence in addition to an IQ score, a general discussion of the claimant's activities and an ALJ's intuition are not sufficient to overcome medical evidence; the ALJ cannot substitute his own judgment and disregard IQ scores.  *Dozier v. Comm'r of Soc. Sec*., 736 F.Supp.2d 1024, 1037 (D.S.C. 2010).  In this case, there is no evidence in the record that indicates Plaintiff's IQ scores are conflicting or inconsistent with his functional capacities; there are no conflicting psychological reports nor any other IQ scores specifically calling into doubt the validity of Plaintiff's scoring; and no treating or consulting medical professional raised any doubt as to Plaintiff's efforts on the testing or as to his low intellectual function.  Accordingly, the ALJ should be directed to consider Plaintiff's challenges to the Listing analysis in light of the record evidence, including Plaintiff's testimony, and the controlling law in this district.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

---

and concentration for extended periods of time.  [R. 341.]

26

IT IS SO RECOMMENDED.


s/Jacquelyn D. Austin
United States Magistrate Judge

January 4, 2016
Greenville, South Carolina